2014 VT 40

# David Cameron v. Rhonda Rollo

[97 A.3d 454]

No. 13-169

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed April 25, 2014

*David Cameron*, Pro Se, St. Albans, Plaintiff-Appellant.

*Rhonda Rollo*, Pro Se, St. Albans, Defendant-Appellee.

¶ 1. **Crawford, J.** This case presents a single legal issue: whether the family division has exclusive jurisdiction over the distribution of marital property acquired during a marriage that ends in annulment. We affirm the decision of the civil division in this case that exclusive jurisdiction over the parties' property division is conferred by statute to the family division.

¶ 2. In 2011, wife filed a complaint for divorce in the Family Division of the Franklin Superior Court. Both parties represented themselves. Following a hearing in July, the family division determined that wife was still married to her first husband at the time of her marriage to husband in March 2000. Wife had received divorce papers filed by her first husband and believed that their marriage had ended in divorce. Her belief proved to be incorrect.

¶ 3. The family division initially ruled that the marriage between the parties was void by operation of 15 V.S.A. § 511. There were no children born to the marriage. The only issue was property division. The court ordered husband to prepare a list of personal property he wanted. Wife was ordered to turn over property belonging to husband.

¶ 4. In August 2011, the family division changed its mind concerning the distribution of property. It ruled that "[s]ince the marriage was void at its beginning, this court does not have jurisdiction to resolve this dispute. The parties are referred to the civil division. Either party may start an action there. The family court's case is closed." Husband followed these instructions. He has filed two small claims cases against his former spouse seeking money damages for property he claims was his.

¶ 5. The first small claims case concerned a utility trailer. Husband obtained a judgment for $2100 for conversion of the trailer by wife. The decision was affirmed by the civil division.

¶ 6. The second small claims case concerned the various items of marital property which he had described in the list he filed with the family division. His complaint stated:

> [Wife] removed items from my home in Swanton around April of 2010. In open court on June 18, 2012, she was a witness in the docket S435-11 Fsc. An attorney stated she had removed my property and put it in storage. She did not object. I am moving forward now [that] there is sworn testimony. On July 11, 2011 in the docket 131-4-11 [wife] was ordered to return all property to me. To date nothing has been returned and has not been accounted for.[1]

Following a merits hearing in June 2012, the small claims judge entered judgment in favor of wife. Husband appealed to the civil division, which held that the civil division and the small claims court lacked jurisdiction over the division of marital property. Husband sought review in this Court. We granted permission to appeal, noting that we would only review the legal question of which court has jurisdiction to distribute property under the circumstances of this case.

¶ 7. Our review of the civil division's dismissal on the grounds that the family division has exclusive jurisdiction over the division of marital property is de novo. See *Paige v. State*, 2013 VT 105, ¶ 8, 195 Vt. 302, 88 A.3d 1182 ("We review dismissal for lack of subject-matter jurisdiction de novo.").

¶ 8. ■ The authority of the family division to divide marital property is derived from statute. Section 751 of Title 15 authorizes the court, "[u]pon motion of either party to a proceeding under this chapter . . . [to] settle the rights of the parties to their property by including in its judgment provisions which equitably divide and assign the property." 15 V.S.A. § 751(a). "[T]his chapter" refers to chapter 11 of Title 15, which encompasses annulment, divorce, and legal separation. The extension of the judicial remedy of property division to cases of annulment lies within the authority of the Legislature. No statutory provision denies parties

---

[1] Docket number 131-4-11 Frdm is the action for divorce filed by wife that resulted in the annulment. Docket number S435-11 Fsc is *Cameron v. Dick Wright Ford*, a small claims action filed by husband against an auto dealer which made a set of duplicate keys to husband's truck at wife's request.

whose marriage is subject to an annulment access to property division by the family division.

¶ 9. ■ The only objection to an order dividing property is conceptual. By statute, the marriage of a person "having a wife or husband living . . . shall be void without decree of divorce or other legal process." 15 V.S.A. § 511(a). The decree of nullity authorized by 15 V.S.A. § 519 is evidence of the invalidity of the marriage, but the marriage is considered to be void from the outset and the decree "will do no more than judicially declare what already exists in fact." *Cook v. Cook*, 116 Vt. 374, 380, 76 A.2d 593, 597 (1950), *rev'd in part on other grounds*, 342 U.S. 126 (1951). This idea that a marriage annulled on grounds of bigamy is void from its inception and therefore cannot support a claim for property division underlies the family division's refusal in this case to divide the parties' property.

¶ 10. ■ The Legislature has created exceptions to the premise that a void marriage has none of the attributes of a legal marriage. Children of an annulled marriage are declared legitimate. 15 V.S.A. § 520. Theoretical arguments about whether a void marriage can give rise to legitimate offspring fall before the obvious truth that children are hardly responsible for the invalidity of their parents' marriage. In an earlier era when children born out of wedlock suffered legal infirmities and social disadvantage, children born to void marriages were treated by the Legislature as fully legitimate.

¶ 11. ■ In the same way, the Legislature extended the remedy of property division to the parties to an annulment when it provided for property division in all cases filed under chapter 11 of Title 15. As this case demonstrates, over the course of twenty years of void or voidable marriage, a couple accumulates property at the same rate as other married couples. The family division is best suited to divide all of their property in a single proceeding virtually identical to a divorce. With a clear directive from the Legislature in hand, there is no need to consider whether theories of putative spouse, equitable division, and relative fault might also support a claim for property division.

¶ 12. ■ For these reasons, we affirm the decision of the civil division that the family division has exclusive jurisdiction over the division of the parties' marital property. The prior order entered

by the family division denying property division in the annulment case was not appealed, but it was not correct either. Husband may have post-judgment remedies in that court.

¶ 13. The dissent joins us in recognizing that the family division mistakenly denied the request for property division because the marriage was annulled. Where we disagree is whether this mistake opens the door to a series of civil lawsuits over ownership and value of the marital estate. The dissent argues that principles of issue preclusion foreclose consideration of whether the small claims court acted correctly in issuing a decision that effectively divided marital property.

¶ 14. ■ This Court has long recognized that the statutory grant of jurisdiction to the family division is exclusive and that there is no "overlapping jurisdiction — matters that belong in family court may not be brought in superior court." *Rogers v. Wells*, 174 Vt. 492, 494, 808 A.2d 648, 650 (2002) (mem.). Section 31(1) of Title 4, recently enacted as part of the unification of the judiciary, excludes from the civil division cases that are subject to the jurisdiction of the family division. This allocation of jurisdiction is consistent with the statutory grant of exclusive jurisdiction to the family division to hear domestic cases including "[a]ll annulment and divorce proceedings." 4 V.S.A. § 33(4).

¶ 15. ■ Our appellate decisions have varied in the enforcement of the boundary between the family and civil division over property disputes. In *Tudhope v. Riehle*, 167 Vt. 174, 178-80, 704 A.2d 765, 767-68 (1997), we rejected an effort by an ex-spouse to bring a second lawsuit in the superior court (as the civil division was then known) on property issues after the family court entered a stipulated judgment order on these issues. In *Slansky v. Slansky*, 150 Vt. 438, 442, 553 A.2d 152, 154 (1988), however, we permitted a claim of conversion to proceed in the superior court after a divorce where one spouse improperly removed the other from the family health insurance coverage. The complexity of human relations will continue to produce cases which fall on both sides of the line. The boundary, however, is clear when the issue is whether marital property belongs to one spouse or the other. As this case demonstrates, confusion and uncertainty about whether a claim for the return of property following a divorce or annulment can be the subject of subsequent litigation in the civil division wastes the time of the parties and the courts. In holding

that the family division has exclusive jurisdiction over the division of marital property in such cases, we seek to discourage exactly the type of collateral litigation filed in successive cases by this plaintiff.

¶ 16. ▮ Finally, we consider the argument that although the family division erred in dismissing the property division claim, the unappealed order is binding upon the parties in subsequent cases under principles of collateral estoppel. Restatement (Second) of Judgments § 12 (1982) furnishes well-established rules of decision concerning the recognition of a judgment by another tribunal in a separate proceeding. See *Quinn v. Schipper*, 2006 VT 51, ¶ 8, 180 Vt. 572, 908 A.2d 413 (mem.) (citing Restatement (Second) of Judgments § 12 in holding that a husband could not collaterally attack superior court's decision that family court, not superior court, had subject matter jurisdiction to decide the husband's motion to enforce provision of parties' separation agreement). The general rule is that after a court has rendered a judgment, the parties are precluded from litigating the question of that court's subject matter jurisdiction in subsequent litigation. Restatement (Second) of Judgments § 12. There is an exception for rulings which are plainly beyond the subject matter jurisdiction of the court. See *id.* § 12(1) (parties may relitigate subject matter jurisdiction where subject matter "was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority"). Although the family division's mistake in this case was to deny its own jurisdiction rather than to extend it, the principle is the same. A fundamental mistake about the scope of a court's jurisdiction does not require courts in subsequent cases between the same parties to repeat the same error.

¶ 17. We recognize the truth of the dissent's concern about the duplicative litigation in this case. The lower court decisions cannot be reconciled because two of them — the denial of family division jurisdiction and the prior order in the small claims appeal between the two former spouses concerning ownership of their trailer — were mistaken. Those cases are not before us. In this case in which we granted permission to appeal, however, the trial court acted correctly in putting its foot down and enforcing the provisions of Title 4 which describe the separate jurisdiction of the civil and family divisions. A contrary decision affirming the small claims judgment in favor of wife might have ended this particular

case, but it would have invited more, not fewer, overlapping cases in both courts.

*Affirmed.*

¶ 18. **Dooley, J.,** dissenting. From time to time we get cases that appear to be relatively small and unimportant but actually raise very significant issues that require careful and full consideration. In my opinion, this is such a case. To the majority this case is about subject matter jurisdiction over property disputes in annulment actions, an issue that will rarely, if ever, rise again. In my opinion, this case is really about the preclusive effect of subject matter jurisdiction determinations and the treatment of litigants, especially those that are self-represented — both subjects regularly appear and impact the justness of this Court's actions. The issue the majority chooses to address is legitimate, but the issues it largely ignores are critical and command a different result. Thus, I dissent.

¶ 19. The concept that a court can act only when it has subject matter jurisdiction over the matter in issue is fundamental to our justice system. Unfortunately, we have historically addressed subject matter jurisdiction with great rigidity, allowing it to be raised at any time in a proceeding, including right up to the end of an appeal, or even thereafter, and over and over again with no finality. Thus, a decision that the deciding court did not have subject matter jurisdiction can be technically right, but undoing the decision can create great injustice for parties who relied upon the apparent ability of the court to adjudicate the controversy. As discussed below, this is a case of great injustice where the claim of lack of subject matter jurisdiction is almost a pure technicality.

¶ 20. We made a great stride forward in ensuring finality of judgments against lack-of-subject-matter-jurisdiction claims where the question of subject matter jurisdiction has already been litigated by adopting the Restatement (Second) of Judgments § 12 (1982). See *Quinn v. Schipper*, 2006 VT 51, ¶ 8, 180 Vt. 572, 908 A.2d 413 (mem.). Section 12 states that a judgment precludes relitigation of subject matter jurisdiction in subsequent litigation with three exceptions. Although I believe none apply, the majority has found that one does: "The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the

action was a manifest abuse of authority."[2] Restatement (Second) of Judgments § 12(1). In considering the majority's position, I note that the exception "applies in only the most limited circumstances." *Lincoln Loan Co. v. City of Portland*, 136 P.3d 1, 9 (Ore. 2006). The Reporter's Notes to § 12 states: "Cases involving plain excess of jurisdiction are rare," citing a case in which a probate court entered a declaratory judgment that a zoning ordinance was unconstitutional. The U.S. Supreme Court describes the standard as a judgment without even an arguable basis or a clear usurpation of power. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (quotation omitted).

¶ 21. The majority provides no analysis of how this case meets the standard of § 12(1) beyond its analysis that the family division was wrong and the civil division was right. Reducing the case to its essentials, plaintiff alleges that the person to whom he thought he was married, defendant, stole his property while he was incarcerated and he could not protect it. She answers by admitting that she had property belonging to plaintiff, and by responding that some of the property was stolen by a third person during a break-in at her house, other property was taken by a friend of plaintiff at plaintiff's request, and some she has but is trying to give back to plaintiff. One piece of property was a utility trailer which, in a separate judgment, the civil division found was sold without plaintiff's consent, meriting an award to plaintiff of $2100. The civil division in this case justified that decision as proper because the trailer was required to be registered, "and was registered only in [plaintiff's] name, thus it had at least some indicia of separate and independent ownership, and it was not the type of item which is obviously joint marital property." By comparison, the court described the property in this case as "various and sundry items which are typical of any decade-long cohabitation, especially under the color of marriage." The legal significance of the expressed differences between these properties escapes me. For both, plaintiff alleged that defendant disposed of the property before any divorce/annulment proceeding was filed — that is, that she committed the tort of conversion, that the property was not available for distribution in the annulment order,

---

[2] The exception does not specifically apply because the language covers the situation where the court finds jurisdiction rather than the situation where it does not. The majority concludes that the policy behind the exception applies in either situation, and I agree.

and that defendant did not contest that she had property belonging to plaintiff.

¶ 22. The civil division order concluded that 4 V.S.A. § 33(4), which gives jurisdiction of annulment proceedings to the family division, includes jurisdiction over the property of persons whose marriage is annulled. It does so in a four-page, single-spaced decision that includes citation to and analysis of cases from six other jurisdictions. The majority goes through our statutes in detail to reach the same conclusion. Neither addresses what this action actually is — a conversion action with respect to property owned by plaintiff and possessed at one time by defendant but not in either's possession at the time of the annulment. I consider it debatable whether the conversion action is exclusively within the jurisdiction of the family division, but we need not, and should not, reach that question. See *LaPlume v. Lavallee*, 2004 VT 78, ¶¶ 8-9, 177 Vt. 526, 858 A.2d 255 (mem.) (holding that plaintiff's claim for money damages against former partner for retention of property was conversion claim subject to jurisdiction of small claims court). The conversion theory was, of course, exactly the rationale under which the civil division awarded plaintiff damages in the separate action regarding the utility trailer. See also *Lord v. Smith*, No. 543668, 33 Conn. L. Rptr. 708, 2003 WL 294412, at *4-6 (Conn. Super. Ct. Jan. 13, 2003) (concluding that court that originally disposed of property during custody dispute between unmarried parties lacked jurisdiction, but that plaintiff could not challenge jurisdiction after it was final given that he agreed to jurisdiction at the time, matter was fully litigated and any subsequent action would have been heard in same superior court).

¶ 23. To say that the family division's ruling was "so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority" creates an exception to issue preclusion so broad as to eat up the rule and bring us back to the days of raising lack of subject matter jurisdiction over and over. The family division ruling may have been wrong, but it is not a manifest abuse of discretion, a clear usurpation of power, or a ruling without an arguable basis.

¶ 24. There is another way to look at what occurred here, that the civil division judge essentially rendered a horizontal appeal from the decision of the family division judge. In *Economou v. Economou*, we clearly indicated our disapproval of horizontal appeals between superior court judges: "To allow a subsequent

irreconcilable ruling to stand would encourage litigants in superior courts to delay proceedings already initiated while awaiting the future assignment of a presiding judge they believed more likely to rule in their favor. The appellate process must proceed vertically, not sideways." 133 Vt. 418, 421-22, 340 A.2d 86, 88 (1975); see also *Kotz v. Kotz*, 134 Vt. 36, 38-39, 349 A.2d 882, 884 (1975). Although we have narrowed the holding of *Economou*, we have not abandoned its rationale. See *Morrisseau v. Fayette*, 164 Vt. 358, 362-64, 670 A.2d 820, 823-24 (1995). I recognize that this "horizontal appeal" was done at the initiative of a judge, rather than a lawyer or litigant, but this makes it even less acceptable. There are ways the system can work out different understandings of the law between judges without giving inconsistent rulings.

¶ 25. There are other important considerations that should affect how we address this case. Whether we apply preclusion represents a balancing of the need for finality against the validity of the judgment for which finality is sought. Restatement (Second) of Judgments § 12 cmt. a. Here the need for finality is compelling, and the interest in validity is almost nonexistent. Subject matter jurisdiction here is virtually a technicality. We are dealing with two divisions of the superior court. No matter which division is involved, the judge will come from the same pool, and the law applied will be the same. Indeed, it is possible that when plaintiff seeks to reopen in the Franklin Family Division, he will appear before the same judge who dismissed his case in the Franklin Civil Division.

¶ 26. Two considerations demonstrate the extreme need for finality in the small claims court. The first is that the jurisdictional issue was raised sua sponte by the judge in the appeal from the small claims decision; otherwise, the case would have ended. The Legislature has authorized small claims actions to provide "a simple, informal, and inexpensive procedure for the determination" of disputes involving less than $5000. 12 V.S.A. § 5531(a). The Vermont Judiciary, through the Court Administrator and the Trial Court Administrative Judge, publishes a booklet to help litigants and prospective litigants understand and use the small claims process. The booklet asks and answers basic questions like: "What is different about small claims cases? You do not need a lawyer. Of course, if you wish, you may have one"; and "The papers you file and the procedures used at the hearing are simple and don't involve many of the legal technicalities used in other courts"; and "You can argue your side of the case in your own words and

present evidence to back it up." Vt. Judiciary, Small Claims Cases in Vermont 1-2 (2013), https://www.vermontjudiciary.org/GTC/civil/MasterDocumentLibrary/Small%20Claims%20Booklet.pdf. There is nothing simple, informal, or inexpensive about a process in which a litigant has to spend years to get an answer to a straightforward dispute, pay three filing fees — four under the majority's decision — and end up fighting pro se a court decision that cites appellate decisions and statutes from six states and a law review article. Of all the places for the judge to interject a legal issue involving subject matter jurisdiction, this should be the last.

¶ 27. The second consideration is that the majority's decision enmeshes these parties in destructive litigation almost without end when the dispute cries out for a resolution. Defendant has alleged that plaintiff is using litigation to control and harass her. Under these circumstances, virtually any final decision would be more just than continuous technicality and indecision. This case was over before the civil division court decided to raise sua sponte a jurisdictional issue. Neither party wanted the result the civil division court has reached; both lost.

¶ 28. In my judgment, the majority has decided the least pressing question in this case, failed to grapple with the most important question, and undercut the modernization of the law of subject matter jurisdiction while affirming great injury to the litigants. We should act decisively here, hold that issue preclusion prohibits courts from second-guessing each other's final judgments, and ensure this kind of decision does not occur again. From the failure of the majority to do so, I respectfully dissent. I am authorized to state that Justice Robinson joins this dissent.